USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/11/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

GURU SWITZOOR,

                    Plaintiff,

      -v-

SCI ENGINEERING, P.C., SHAHID IQBAL
and THARMALINGAM "LINCOLN"
SATKUNARAJAH,

                    Defendants.

-----------------------------------------------------------X

No. 11 Civ. 9332 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiff Guru Switzoor brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York State Labor Law, N.Y. Lab. Law §§ 650 et seq., ("NYLL") against Defendants SCI Engineering, P.C. ("SCI"), Shahid Iqbal and Tharmalingam Satkunarajah (collectively, "Defendants"). Switzoor's amended complaint includes claims for failure to pay overtime wages, frequency of payments and unlawful deduction pursuant to NYLL, breach of contract and retaliation. Defendants filed counterclaims against Switzoor alleging conversion of company property and funds. Before the Court is Switzoor's motion for summary judgment on his overtime claims and Defendants' counterclaims. For the reasons set forth below, Switzoor's motion is granted as to his overtime claims and denied as to Defendants' counterclaims.

**I.     Background[1]**

SCI is a company that provides professional engineering services to contractors on government contracts.  (Pl. 56.1 ¶ 1.)[2]  SCI provides inspectors to ensure that contractors are complying with its clients' plans and specifications.  (Parkhurst Decl. Ex. A ("Iqbal Dep.") 12:8-18.)  Shahid Iqbal is the owner of SCI and Tharmalingam Satkunarajah, a vice president of the company, is responsible for the day to day operations of the business.  (Pl. 56.1 ¶¶ 2, 4.)

Switzoor was hired by SCI to "specialize in procuring and execution of government agencies contracts" and commenced employment with SCI on March 30, 2009.  (Satkunarajah Aff. ¶ 4 & Ex. A; Pl. 56.1 ¶ 5.)  For the majority of Switzoor's employment at SCI, he worked as a Senior Inspector on a project in which SCI was a subcontractor on a New York State Department of Transportation ("DOT") project involving the painting and cleaning of twelve bridges in Queens County, New York.  (Pl. 56.1 ¶ 7; Switzoor Decl. ¶ 2.)  On the DOT project, SCI served as a subcontractor to LiRo Engineers, P.C.  (Iqbal Dep. 45:12-14.)

When Switzoor was hired, he was offered a wage of $48.00 per hour.  (Iqbal Dep. 28:8-12; Satkunarajah Aff. ¶ 4 & Ex. A.)  For hours worked over forty hours in a week, SCI paid him at an overtime rate of $72.00.  (Iqbal Dep. 40:25-41:8.)  According to Defendants, this compensation was based on Switzoor's qualifications as a "Chief Inspector."  (Hummel Aff. ¶ 32.)  SCI's client, however, only reimbursed SCI for the lower rate of a "Senior Inspector," which was an hourly rate of $33.42 and an overtime rate of $50.13.  (Id. ¶¶ 32-33.)  Defendants

---

[1]     The following facts are drawn primarily from Plaintiff's Rule 56.1 Statement of Material Fact Not in Dispute ("Pl. 56.1"); the Declaration of Joshua Parkhurst dated January 18, 2013 ("Parkhurst Decl.") and the exhibits attached thereto; Affidavit in Opposition of Ralph A. Hummel, dated January 25, 2013 ("Hummel Aff."); and the Lincoln Satkunarajah Affidavit in Opposition dated January 25, 2013 ("Satkunarajah Aff.") and exhibits attached thereto.

[2]     Unless otherwise noted, where only one party's Rule 56.1 statement is cited, the other party either does not dispute that fact or has offered no admissible evidence to controvert that fact.

attempted to get Switzoor re-classified as "Chief Inspector" in order to raise their reimbursement rate to the level of Switzoor's compensation and sought assistance from Switzoor in this process. (Id. ¶ 32.) Ultimately, SCI was unsuccessful at getting their reimbursement increased and thus were paying Switzoor at a higher rate than they were being reimbursed. (Id. ¶¶ 34-36.)

In 2010, SCI changed Switzoor's overtime compensation to a rate of $50.13 per hour which represented time and a half of SCI's reimbursement rate. (Pl. 56.1 ¶ 19.) The parties disagree about the circumstances surrounding this decision to reduce his overtime compensation. According to Defendants, Switzoor's overtime rate as well as his hourly rate were changed pursuant to an agreement between the parties. (Hummel Aff. ¶ 40.) Defendants contend that Satkunarajah informed Switzoor that SCI was going to terminate his employment and Switzoor thereafter offered to accept less compensation in order to keep his job. (Id. ¶¶ 37, 40.) Satkunarajah avers that this discussion occurred as follows:

> During the discussion about saving plaintiff's job by reducing his salary, plaintiff willingly agreed to accept $33.42 per hour and overtime at the rate of $50.13 per hour, instead of his then-existing compensation of $48.00 per hour and overtime at the rate of $72.00 per hour. Defendants agreed to that resolution and changed plaintiff's compensation to that level. After securing continuation of his job, plaintiff pleaded further to be paid additional compensation for new services he offered to perform. Plaintiff said that he needed to receive roughly the same income to meet his personal financial obligations and plaintiff offered to do additional new work for extra money. Defendants considered plaintiff's offer and accepted it. In exchange for paying plaintiff $15.00 per hour – which, when added to his newly-reduced rate of $33.42 per hour, brought his total compensation to approximately the same income level he received before – defendants expected plaintiff to perform new services and he did.

(Satkunarajah Aff. ¶ 25.)

Switzoor, however, contends that he never agreed to a lower rate of compensation. Instead, Switzoor testified that he noticed a change in his overtime rate on a paystub and called Satkunarajah who informed him that they were working with the DOT to increase their

3

reimbursement and that "he'll try and compensate [Switzoor] once it gets bumped up." (Switzoor Dep. 25:15-24.) Switzoor further testified that he was never told that Defendants were considering terminating his employment. (Id. at 29:17-19.)

On December 20, 2011, Switzoor filed the complaint in the instant matter. Upon answering, Defendants added two counterclaims against Switzoor for conversion of property and money. Switzoor then filed an amended complaint alleging that the Defendants' counterclaims were brought in retaliation for the instant action. Switzoor has now moved for summary judgment on his overtime claims and Defendants' counterclaims. For the following reasons, Switzoor's motion is granted in part and denied in part.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of establishing the absence of any genuine issue of material fact." Zaleski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010) (citing Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986)). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Windsor v. United States, 699 F.3d 159, 192 (2d Cir. 2012) (internal quotation marks and alterations omitted). "All ambiguities must be resolved in favor of the non-moving party and all permissible inferences from the factual record must be drawn in that party's favor." Zaleski, 613 F.3d at 340 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Nonetheless, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

4

**III.     Discussion**

    **A.     Subject Matter Jurisdiction**

As an initial matter, Defendants contend that the Court lacks subject matter jurisdiction over this action because Switzoor has not demonstrated that he or SCI is engaged in commerce within the meaning of the FLSA.

Section 207 of the FLSA covers any employee who "in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 207. Defendants allege that "commerce" within the meaning of the statute is limited to interstate commerce and claims that Switzoor has failed to prove that he or SCI was engaged in such interstate commerce.

Defendants' argument lacks merit. Although an element of a FLSA claim is indeed that the employee or the defendant is involved in interstate commerce, see Velez v. Vassallo, 203 F. Supp. 2d 312, 330 (S.D.N.Y. 2002), "[e]mployees involved in the maintenance, repair, or improvement of instrumentalities of commerce, including highways and bridges . . . are all sufficiently related to interstate commerce legally to be a part of that commerce." Lukaszewski v. County of Ulster, No. 1:08-CIV-483 (FJS/RFT), 2009 WL 1794766, at *2 (N.D.N.Y. June 23, 2009). It is undisputed that Switzoor worked for SCI in its capacity as a subcontractor for the DOT on a project involving the maintenance of twelve bridges. All of these bridges were part of the Interstate Highway system. (Switzoor Reply Decl. ¶ 3) On this ground alone, it is clear that the Court has subject matter jurisdiction over this action. SCI's interstate presence, as highlighted on its website, provides further support for this conclusion. (Id. ¶¶ 4-7.)

    **B.     Switzoor's Overtime Claims**

Switzoor seeks summary judgment on his overtime claims brought pursuant to the FLSA

5

and the NYLL.[3] Switzoor claims that although SCI initially paid him overtime at the legally required rate, it unlawfully lowered his overtime rate in 2010. It is undisputed that SCI originally paid him an hourly rate of $48.00 and an overtime rate of $72.00 for all hours worked over forty and that, in 2010, SCI changed his overtime rate to $50.13. Instead, the dispute is about whether the lowered overtime rate complied with FLSA and the NYLL. Switzoor claims that SCI unilaterally lowered his overtime rate because they were losing money, (id. ¶ 9), whereas Defendants claim the lowered rate was pursuant to an agreement between Defendants and SCI entered into in order to avoid Switzoor's termination, (Hummel Aff. ¶ 40). Defendants argue that this dispute precludes summary judgment and requires resolution at trial.

"The FLSA was enacted to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers,' and to 'guarantee [] compensation for all work or employment engaged by employees covered by the Act.'" Havey v. Homebound Mortg., Inc., 547 F.3d 158, 160 (2d Cir. 2008) (quoting 29 U.S.C. § 202(a) and Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944)). It mandates that an eligible employee "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week" and the NYLL adopts the same standard. See Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013); 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2011) (incorporating the FLSA definition of overtime into the NYLL).

"[T]he regular rate refers to the hourly rate actually paid the employee for the normal,

---

[3] Switzoor presents evidence that he is an employee covered by the FLSA and Defendants do not argue otherwise. The Court agrees. See Zubair v. Entech Eng'g, P.C., 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011) (plaintiff, who worked as an inspector for an engineering firm that performed paint inspection services on DOT projects did not fall under either the "learned professional exemption" or the "highly compensated employee exemption" and was thus an employee covered by the FLSA).

6

nonovertime workweek for which he is employed." Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945); Gorman v. Consol. Edison Corp., 488 F.3d 586, 595 (2d Cir. 2007). A regular rate will not be recognized when it is set in a "wholly unrealistic and artificial manner as to negate the statutory purpose" of the FLSA. Walling v. Helmerich & Payne, Inc., 323 U.S. 37, 42 (1944); see also Youngerman-Reynolds, 325 U.S. at 424 (observing that the regular rate "must reflect all payments which the parties have agreed shall be received regularly during the workweek" and "is not an arbitrary label chosen by the parties"). In fact, "even when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular rate for all hours worked in excess of 40." Helmerich & Payne, Inc., 323 U.S. at 42; see also Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 740 (1981) ("FLSA rights cannot be abridged by contact or otherwise waived because this would nullify the purposes the statute and thwart the legislative policies it was designed to effectuate") (internal quotation marks omitted).

Even if Defendants' version of events is accurate, their actions violate the FLSA and NYLL and the parties' dispute as to whether Switzoor agreed to have his compensation lowered is immaterial. Defendants acknowledge that when SCI lowered Switzoor's regular hourly rate in 2010 to $33.42 and his overtime rate to $50.13, they also added approximately $15.00 to his hourly rate in compensation for the performance of new services. (Satkunarajah Aff. ¶ 25.) It is thus undisputed that Switzoor's hourly rate remained $48.00 from April 2010 to September 2011, when Switzoor resigned from SCI. (See id. ("In exchange for paying plaintiff $15.00 per hour—which, when added to his newly reduced rate of $33.42 per hour, brought his total compensation to approximately the same income level he received before—defendants expected plaintiff to perform new services and he did.").) The fact that Switzoor's hourly rate remained

7

$48.00 is further confirmed by paystubs from April 2010, the month that his overtime rate was changed (reflecting an hourly wage rate of $48.00 both before and after his overtime rate was changed) as well as paystubs from October 2010 (reflecting an hourly wage rate of $48.00 and an overtime rate of $53.10). (Switzoor Reply Decl. Ex. G.; Parkhurst Decl. Ex. H.)

Thus, Switzoor's hourly rate—his regular, nonovertime compensation—remained at $48.00 throughout his employment and Defendants were required to pay him time and a half that regular rate pursuant to the FLSA. Even if Switzoor had indeed agreed to have Defendants' lower his regular hourly rate to $33.42, once the additional approximately $15.00 was added for the performance of new services, $48.00 became the new hourly rate from which his overtime rate should have been based. Accordingly, summary judgment is granted for Switzoor on his overtime claims brought pursuant to the FLSA and NYLL.[4]

### C.   Liquidated Damages

An employee who violates the FLSA's overtime requirements is liable for any unpaid overtime compensation "and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Court may, in its discretion, reduce or deny liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. Similarly, under the NYLL, an employee is entitled to liquidated damages "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law. § 198(1-a). "Good faith" in this context requires that a defendant produce "plain and substantial evidence of at least

---

[4] At this time, the Court does not resolve the amount of damages owed to Switzoor, which can be determined after additional proceedings. See Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447, 462 n.14 (S.D.N.Y. 2008); Barfield v. New York City Health & Hosps. Corp., 432 F. Supp. 2d 390, 395 (S.D.N.Y. 2006), aff'd, 537 F.3d 132 (2d Cir. 2008).

an honest intention to ascertain what the Act requires and to comply with it." Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 71 (2d Cir. 1997); see also Barfield v. New York City Health and Hosp. Corp., 537 F.3d 132, 150 (2d Cir. 2008) ("To establish the requisite subjective good faith, an employer must show that it took active steps to ascertain the dictate of the FLSA and then act to comply with them.") (internal quotation marks omitted).  The Second Circuit has characterized the employer's burden as "a difficult one," and emphasized that "double damages are the norm and single damages the exception."  Barfield, 537 F.3d at 150.

Defendants have not demonstrated that they had a good faith basis for denying Switzoor the legally required overtime compensation because they did not take "active steps to ascertain the dictates of the FLSA."  Id.  In fact, Defendants have provided no evidence—let alone substantial evidence—of its efforts to comply with the statute.  To the contrary, Iqbal acknowledged that Defendants did not consult with counsel, the United States Department of Labor, the New York State Department of Labor or anyone else with regard to whether the overtime rate for their inspectors needed to be time and a half.  (Iqbal Dep. 20:16-21:16.) Furthermore, they have provided no evidence that they took any steps to confirm that they did not need to pay overtime on the additional $15.00 when they adjusted Switzoor's compensation. "Such conduct, considered as a whole, demonstrates not a good faith effort to comply with the [FLSA and NYLL's] requirements, but instead a complete disregard for them." Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 340 (S.D.N.Y. 2005); see also Zubair v. EnTech Engineering P.C., 900 F. Supp. 2d 355, 359-60 (S.D.N.Y. 2012) ("While the Court recognizes that EnTech is a small company without in-house counsel, employers have a duty to learn the applicable labor laws . . . ."). Accordingly, Defendants cannot meet their burden and Switzoor is entitled to liquidated damages as a matter of law.

District courts disagree about whether a plaintiff can recover liquidated damages under both the FLSA and the NYLL.  *Compare e.g.*, Greathouse v. JHS Sec., Inc., No. 11 Civ. 7845 (PAE)(GWG), 2012 WL 3871523, at *7 (S.D.N.Y. Sept. 7, 2012) *with* Wicaksono v. XYZ 48 Corp., 10 Civ. 3635 (LAK)(JCF), 2011 WL 2022644, at *4 (S.D.N.Y. May 2, 2011).  The majority view is that recovery under both statutes is permitted because they serve different purposes.  See Palacios v. Z&G Distribs., Inc., 11 Civ. 2538 (AT)(FM), 2013 WL 4007590, at *3 (S.D.N.Y. Aug. 6, 2013) (collecting cases).  Liquidated damages pursuant to the FLSA "are considered compensatory rather than punitive in nature," Reich, 121 F.3d at 71, whereas under the NYLL they "'constitute a penalty' to deter an employer's willful withholding of wages due," Reilly v. NatWest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (quoting Carter v. Frito-Lay, Inc., 74 A.D.2d 550 (1st Dep't 1980)).  The Court agrees with the majority view and thus concludes that Switzoor is entitled to liquidated damaged under both statutes.  See Lanzetta v. Florio's Enterprises, Inc., No. 08 Civ. 6181 (DC), 2011 WL 3209521, at *5-6 (S.D.N.Y. July 27, 2011).

### D.     Iqbal's and Satkunarajah's Individual Liability

Switzoor seeks to hold Iqbal and Satkunarajah individually liable for Defendants FLSA and NYLL violations.  The FLSA's definition of "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  A person may not be held individually liable for a company's FLSA violations simply because he was an executive of that company.  See Irizarry v. Catsimatidis, 722 F.3d 99, 109 (2d Cir. 2013).  "Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate 'employer' status."  Id.  "Instead, to be an 'employer,' an individual defendant must

possess control over a company's actual 'operation' in a manner that relates to a plaintiff's employment." Id. The individual, however, need not "have been personally complicit in FLSA violations." Id. at 110.

The NYLL defines "employer" as "any person . . . employing any individual in any occupation, industry, trade, business or service" or "any individual . . . acting as an employer." N.Y. Lab. Law. §§ 190(3), 651(6). As the Second Circuit recently noted, the New York Court of Appeals has not yet decided whether the tests for "employer" status is the same under the FLSA and the NYLL. See id. at 117. Courts in this district, however, have applied the same analysis to both statutes. See Greathouse, 2012 WL 3871523, at *3; Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003).

The record establishes that both Iqbal and Satkunarajah were employers within the meaning of the FLSA. Iqbal testified at his deposition that he owns 100% of the company and that Satkunarajah is responsible for the "[d]ay-to-day operation and [] reporting to [him]." (Iqbal Dep. 9:17-19, 11:2-6.) Furthermore, Satkunarajah averred that he "was personally involved in all dealings with plaintiff, from beginning to end" and that he "communicated the initial job-offer to plaintiff and [] dealt with plaintiff on all matters." (Satkunarajaf Aff. ¶ 3.) Documentary evidence confirms that Satkunarajah made Switzoor his initial offer of employment and communicated with Switzoor with respect to other aspects of his employment. (Parkhurst Decl. Exs. D, E.) Moreover, the evidence reflects that Iqbal and Satkunarajah agreed upon the original terms of Switzoor's offer, (Iqbal Dep. 27:21-28:3), and that Iqbal made the decision to lower Switzoor's overtime rate and told Satkunarajah to convey that information to Switzoor, (id. at 43:20-25.) Based on this evidence, it is clear that both Iqbal and Satkunarajah had "authority over management, supervision and oversight of Switzoor's affairs in general" and because

"exercise[d] . . . direct control over" him. See Irizarry, 722 F.3d at 107. Accordingly, they were his employers for purposes of the FLSA and can be held individually liable for violations of the statute. See Alladin v. Paramount Mgmt., LLC, No. 12 Civ. 4309 (JMF), 2013 WL 4526002, *4 (S.D.N.Y. Aug. 27, 2013) (finding that defendant who had supervisory authority over plaintiff and established terms of her employment was an employer for purposes of FLSA).

### E.     Defendants' Counterclaims Against Switzoor

Switzoor also moves for summary judgment on Defendants' counterclaims. Defendants' first counterclaim alleges that Switzoor unlawfully converted Defendants' property and their second counterclaim alleges unlawful conversion of Defendants' monetary funds. (Answer ¶¶ 52-59.)

"Under New York law, '[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession.'" Stern v. Regency Towers, LLC, 886 F. Supp. 2d 317, 325 (S.D.N.Y. 2012) (quoting Colavito v. N.Y. Organ Donor Net., Inc., 8 N.Y.3d 49-50 (2006)). To state a claim for conversion in New York, a plaintiff must allege that "(1) the party charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another [,] (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." Goodman v. Port Auth. of New York and New Jersey, 850 F. Supp. 2d 363, 367 (S.D.N.Y. 2012). When the alleged converted property is money, the money must be "described or identified in the same manner as specific chattel." Interior by Mussa, Ltd. v. Town of Huntington, 664 N.Y.S.2d 970, 972 (2d Dep't 1997) (internal quotation marks omitted).

Defendants allege that when Switzoor left his employment at SCI, he failed to return

several pieces of physical equipment owned by SCI: painting inspection equipment, a laptop computer, a data-card, and a cell phone. (Hummel Aff. ¶ 13.) They claim that this property has still not been returned, with the exception of the painting inspection equipment that was returned after the start of this litigation. (Id. ¶ 16; Defs. Resp. 56.1 ¶ 33.) Defendants also "seek recovery of various economic benefits plaintiff received but was not entitled under his employment contract: e.g., excessive vacation time; special health insurance; and three months of payroll when plaintiff was not working." (Satkunarajah Aff. ¶ 13.) Switzoor counters that he returned SCI's cell phone and data card, in addition to the painting testing equipment. (Pl. 56.1 ¶ 33.) He further contends that the laptop computer at issue is owned by the DOT and that he returned it to the DOT. (Id. ¶¶ 34. 36.) With regard to the alleged money owed for money received that he was not entitled to under his contract, Switzoor testified that SCI agreed to all of his vacation time as well as his medical coverage, which included full coverage for his family. (Switzoor Dep. 35:4-7; 38:9-13.)

The existence of these disputed facts which are critical to adjudicating a conversion claim precludes summary judgment on Defendants' counterclaims.

### IV. Conclusion

For the foregoing reasons, Switzoor's motion for summary judgment is granted in part and denied in part. Switzoor is entitled to summary judgment on his overtime claims pursuant to the FLSA and NYLL. Defendants' counterclaims cannot be resolved on summary judgment as there are disputed issues of fact that must be resolved by the jury.

A telephone conference has been scheduled for September 19, 2013 at 3:00 p.m. The parties shall jointly contact Courtroom Deputy Allison Cavale at (212) 805-0162 at that time.

The Clerk of Court is respectfully directed to terminate docket number 24.

SO ORDERED.

Dated: September 11, 2013
New York, New York

_____
Ronnie Abrams
United States District Judge